v. Nobles Good morning, Mr. Label. Good morning, Your Honor. May it please the Court, Mike Label on behalf of Blair Mitchell, the appellant. As the Court knows, Mr. Mitchell passed away nine days ago. And I'm going to start with some of the concerns that the clerk and the Court have forwarded to counsel. The case is not moot, notwithstanding Mr. Mitchell's passing. He alleged claims for damages as well as for injunctive relief. Don't we have to have a personal representative now, though? Okay. Yes, so Georgia law has a broad statute for survival of claims. And essentially in a case like this, it's very well established where there's damages to or claim for damages to injury to a person that the claim does succeed to the personal representative. Of course, in the district court, there's Rule 25A, which allows appointment of a personal representative within 90 days of the filing of the suggestion of death. Does Mr. Mitchell have family? Yes. So I've communicated primarily with Mr. Mitchell since my appointment. And then about six weeks, two months ago, Mr. Mitchell's son and I had some contact. We've been in contact three times since his passing, at least three times. He's coming to Augusta this weekend to collect some personal effects. As the Court may know from the autopsy report, he passed away at Augusta State Medical Prison. So I anticipate that I'll be seeing Mr. Mitchell's son, William. I understand he's an only son. And so I do anticipate that a personal representative will be appointed in due course. And Mr. Mitchell was very interested in having his family pursue the litigation if anything happened to him. And I've only preliminarily discussed that with Mr. Mitchell's son, William. And my feeling is that he also is interested, obviously has a lot of questions in that regard. So yes, the short of it is I would anticipate a personal representative being appointed soon. And that personal representative would then be in charge of the case, the litigation from that point forward. And did you say Georgia law allows 90 days for that? No, Your Honor. That is the default rule in the federal courts. Georgia law, I'm not aware of there being a time limit. I do understand that a personal representative under Georgia law should be appointed to control the litigation and that sort of stuff. And I do not anticipate that being a problem here. So your expectation is that within the 90-day period, a motion to substitute with a personal representative having been established will be filed? That is my anticipation, yes, Your Honor. Okay. One of my concerns about this case is that it appeared from the complaint that Mr. Mitchell's complaint was that there was a new treatment, potentially revolutionary kind of cure even from taking those allegations is true, that was not being afforded him. And it's not clear to me that the complaint alleges that he was being denied treatment, that he had perhaps suffered some denial at an earlier prison, but his complaint as to the last place where he was imprisoned was that he just wasn't being given the treatment that he preferred. Could you help me with that? Yes, Your Honor. Of course, as the court is aware, Mr. Mitchell was pro se below up until the court's appointment of me on appeal. His complaint is entitled to liberal construction as a pro se litigant. Your Honor covered much of this ground in the Brown v. Johnson case, which also was the primary 1915G case out of the 11th Circuit. In this particular case, a fair reading of the complaint alleges both that he, that is Mr. Mitchell, was not receiving any medical treatment for hepatitis C. That is primarily grounded in paragraph 7 of the complaint on page 10, the PACER page numbers, page 10 of the complaint, where he alleges a lack of treatment, the development of cirrhosis stemming from the lack of treatment. Those are his words. And then also he goes on. What you're saying is that that allegation, the lack of treatment, cirrhosis has begun. We should liberally construe to say, to allege that the last prison, Augusta, right, is where he was imprisoned then. Is that right? He was at Autry State Prison at the time of filing the complaint. At Autry. Yes. Okay. So at Autry. That's right. And he had been at Augusta before. So he came back to Augusta. That's where he passed away. Yes, just very recently. Okay. All right. So when the complaint that was filed, he's complaining about Autry. That's correct, Your Honor. And you're saying we should read, we should liberally construe paragraph 7 to say that he was being denied treatment altogether and that cirrhosis had begun as a result of that. Is that how we're to read it? Yes, Your Honor. It's also supported by paragraph 14 on page 13 where he's talking about a failure to assist plaintiff after numerous attempts for medication and or treatment. And then on page, the following page, paragraph 16. Numerous attempts and or, okay. So Woods, Noble, and Hendricks are all at Autry. That's correct. And so you say we're to construe that as referring back to this paragraph 7 on page 10 and not to refer only to the paragraph 12 that begins on page 11 and ends on page 12 about not being provided Harvani? That's correct, Your Honor. I do acknowledge the complaint also alleges Harvani, this breakthrough medication which could potentially provide a cure for him. He also, obviously in his complaint, does discuss that. But I do think that a fair reading of the complaint and certainly a liberal reading of the complaint or a liberal construction of the complaint alleges the denial of any treatment up until the filing of the complaint, Your Honor. And when he speaks about Harvani, he talks about how it was effective on people who had not received any treatment. That's correct, Your Honor. And he cites the trials and that seems to be his allegation that notwithstanding the lack of treatment up until that point, he was still a candidate or could benefit from this breakthrough medication. And Your Honor should keep in mind that obviously the district court's sua sponte dismissal of the complaint of the case precluded Mr. Mitchell from either offering any clarification of the complaint. If Your Honor or the court were to indulge a reading of the filings in the appellate court record, the motion for reconsideration, the motion to amend, the affidavits in support of the motion to amend, those documents are chock full of statements regarding the denial of any treatment at the time he was at Autry State Prison, which was through the time that he was filing those documents pro se in the 11th Circuit Court of Appeals prior to my appointment about a year ago. So those statements, in other analogous circumstances, the court has allowed pro se prisoner responses to R&Rs, to motions to dismiss, to elaborate on the complaints allegations. And analogously, if the court were to construe those allegations here, even the notice of appeal filed with all of the documents that are appended to it in the district court record, make it very clear that he was complaining about a denial of treatment. So again, the case is very analogous to Brown v. Johnson, notwithstanding the state's attempt to show this as a mere disagreement over the extent of medical care that was provided. Let me make sure I understand this, what you think we ought to do, just as a technical matter. Okay, so if we were to liberally construe paragraphs 7 and 13, or 14, yeah, 14 I guess it was, in the manner that you've outlined today, I'd say that because of that, based on that liberal construction, it was error for the district court to dismiss. But we would have to wait for the substitution of Mr. Mitchell's personal representative. But we would then, if that's done, send it back to the district court then to remand it for further proceedings. Yes, Your Honor. I'm not opposed to that. I've never dealt with this circumstance and I could not find any authority other than the one case, the older 1981 Fifth Circuit case. But certainly that seems appropriate to have a personal representative. And as I don't anticipate that will be a problem, we're not opposed to that in this case. Obviously, the urgency has passed, if you will. Yes, right. So I appreciate the motion for, or the court's ruling on the motion to expedite review and such. But under the circumstances, I don't think there's any harm or delay in acting that way. Yeah, I mean, I think we kind of have to do that to have, we have to have adverse parties or the case is going to become made. Sure. I'm going to skip over the Eighth Amendment issues. Obviously, there's an objectively serious need. The State has not argued that there's not a, the prongs of a subjective indifference are not met. I'm happy to address those in reply if necessary. I would like to talk about the second half of the lower court's ruling for just a couple of moments. And that is the alternative holding regarding Mr. Mitchell's purported false statements. There's a couple problems with the alternative holding of the district court. The first is that Mr. Mitchell was not provided any notice regarding, or an opportunity to respond to the court's ruling that he was providing false and misleading statements to the court. The lower court relied primarily on Rule 11. And as Your Honor knows, as the court knows from the appellant's blue brief, Rule 11c1 on its own terms, on its face, requires an opportunity to respond. And that was denied here. I will say that Judge Pryor in 2011, in an analogous circumstance, made the same point in a published decision more eloquently and succinctly than the appellant's blue brief. And that is Tissot v. Airbus 631F1321, where the court in that published decision indicated that the district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond. There are exceptions, narrow exceptions, such as if there's futility or the claim would be patently frivolous. But neither of those would apply here. That was a form nonconvenience case, but the same abuse of discretion standard applies. So that's the first issue. And then the second issue is that the court's ruling that Mr. Mitchell could simply pay the $400 filing fee and re-allege his complaints and there would be no prejudice because he could then pursue in the district court at that time, was based on an error of law and, frankly, a misunderstanding of the facts as well. And that is that a dismissal in that circumstance was tantamount to a dismissal with prejudice in that Mr. Mitchell, the whole point of his complaint was that he needed urgent, immediate care. And he could not get that by simply saving his pennies. He had 37 cents at the time he filed his complaint, according to the IFP application. Thank you. Ms. Hirsch. May it please court. My name is Michelle Hirsch. I'm from the Office of the Attorney General, appearing here today on behalf of the state of Georgia, who is before this court as a friend of the court. Why is that? I've never seen that done this way. Your Honor, my understanding, because the case was dismissed before service had been entered or ordered, nobody had any knowledge of the case in the district court. So there was no appearance by the defendant. That's correct. And we received notice. And I apologize. I don't know exactly how we received notice. But when Mr. Label here was appointed, we received notice of that. And we decided to participate in the appeal to the extent that we could be helpful to the court in deciding the issues. There are two separate and distinct reasons why the order of the district court can be affirmed in this case. The first is because Mr. Mitchell is concerned. I'm concerned. We have an obligation, do we not, with the pro se litigant to construe the allegations of the complaint liberally in his favor. Absolutely, Your Honor. That's well established. Yes. Paragraphs 7 and I think it was 14 are cryptic. But why isn't Mr. Label's description of them fair enough that we should send the case back? That is that in alleging that the lack of treatment cirrhosis has begun, in alleging that Defendant Woods Noble Hendricks failed to assist the plaintiff after numerous attempts for medication and or treatment constitute deliberate indifference to plaintiff's serious medical needs in violation of his rights under the 14th Amendment of the Constitution and further constitutes cruel and unusual punishment. Why isn't that enough to send this case back? Because, Your Honor, in addition to liberal construction and reviewing the allegations in favor of the plaintiff, the court has to review the complaint as a whole. And so you can't cherry pick certain allegations in order to support one side or just decide that you're going to ignore everything else in the complaint. And here, when you look at the complaint as a whole, you have allegations that Mr. Mitchell was receiving treatment both at Autry State Prison and Augusta State Medical Prison. He was enrolled in chronic care clinics. He was being prescribed medications. He was being seen by physicians. Are you here to argue that his complaint was not sufficient? I mean, the man's dead and buried. I mean, I don't understand the point of your argument. The point of my argument is the information that was before the district court at the time that she ruled on this complaint. When she looked at the complaint as a whole, it was certainly a fair interpretation of the complaint, given his reference to proper medications with respect to his hepatitis C. Okay, I get that. And it seems to me to be the sort of thing that could be sorted out in a merits determination with evidence. And I can understand the district court, who is obliged by federal law to take a preliminary look at it before the defendant appears and to determine as a threshold gatekeeping kind of function whether the complaint should be dismissed or not, okay? But isn't it fair to say that as Mr. Label, now we have court-appointed counsel here, who says, you know, there is another way of looking at this complaint. I could see where a judge might read the complaint as a whole as saying, this is really a complaint that he wasn't being given the treatment that he wanted as opposed to being given any treatment at all. Mr. Label says, no, look, here's another way of looking at it. Yes, he perhaps complains about being denied Hervonni, a treatment that he would have preferred. But you can also liberally construe the allegations as alleging he was also being denied any treatment, and Hervonni would be especially helpful to someone who had previously been denied treatment. That's another way of looking at it. If there's a reasonable way of construing it, because it's a pro se litigant and we have an obligation to liberally construe it, we send it back to the district court. The prison has the opportunity to say, to prove he was not being denied treatment. He was being given treatment. Here's all the records of it. Isn't that the right way to resolve it? Well, Your Honor, I would have to say that if you look solely at the paragraphs referred to by Mr. Label under a liberal construction, I would concede that those paragraphs established an imminent need under the Brown v. Jackson case. I'm merely saying that when the district court looked at this case, she looked at the complaint as a whole and didn't disregard later allegations that tended to discount or contradict those allegations. Right. I can see that given the district court's position, but now we're in a different position, and it's been pointed out to us by our other friend here that there's a different way of looking at the complaint. And if we liberally construe it in that way, we ought to send it back, shouldn't we? I think if you liberally construe it in the way suggested, it is a fair interpretation of the complaint that it alleged imminent danger, absent looking too closely into the follow-up allegations. Yeah. Ms. Hirsch, do you routinely represent the Georgia Department of Corrections? I routinely represent individuals employed by the Georgia Department of Corrections. I mean, do you know what their protocol is for treating hepatitis C? Your Honor, they do have an established protocol. There are, to my understanding, there are numerous inmates in the prison system that have hepatitis C. I'm not surprised. I don't believe that they've taken an official policy yet with respect to this new drug, Harboni. But the standard treatments for hepatitis C are routinely offered to the inmates in the prison system, from my experience looking at the cases. You know, I'm just wondering, I mean, obviously, it can't be much fun for you to come here and argue that his pleadings weren't sufficient to show an imminent danger to Mr. Mitchell when he's dead. I mean, obviously, he was in imminent danger. I mean, what do we learn from this? I mean, it doesn't make the courts look good. It doesn't make the Department of Corrections look good. I mean, what do we learn from this? Your Honor, I have not done any sort of investigation into the actual facts surrounding Mr. Mitchell's treatment or the course of his illness, so I can't comment on whether or not those allegations are, in fact, true. I accepted them as true for purposes of preparing for this case, but I can't comment on whether or not he wasn't receiving treatment or was, or if there was a medical reason why he wasn't receiving a treatment. I just don't have the information. And I realize you were not involved in the district court proceeding, but you are familiar with Judge Pryor's case, the Brown case. Yes, Your Honor. I mean, the combination of hepatitis C diagnosis and no treatment is an imminent danger that allows for a filing even if you've got three strikes. I would agree with that statement, Your Honor. And, you know, so maybe going forward, some of these cases will be treated differently by your office to the extent that you're involved. The real problem here is how the district court treated it, right? I don't disagree. Your Honor, if I can briefly... And Congress has obligated the district court to perform that screening mechanism. And the complaint in this case, it was obviously longer and it was unclear. And so I think that looking at everything as a whole... I think we've settled that if we're going to liberally construe the allegations in the manner that Mr. Lapel described today, the proper thing to do is to vacate and remand, right? Well, the district court did rely upon an alternative basis for the dismissal, and that was Mr. Mitchell's failure to be truthful in his civil action complaint by failing to disclose his litigation history. He wasn't given notice and opportunity to be heard, though, about that. Well, Your Honor, this court has held that a notice is not required when the dismissal is without prejudice. But in this case, and technically I guess it was without prejudice, but when you have what is truly an imminent harm, isn't the real sanction that's being imposed whatever the harm is? Because if it's truly imminent, here, death, right? If you dismiss it without prejudice, you're effectively, I mean, sentencing the plaintiff to death. I mean, that's what your sanction is, effectively, as a practical matter. I don't mean to suggest that the district court meant for that to happen, but when you actually have true imminent harm, it just seems like there might be a problem with dismissing even if it's without prejudice. Maybe there is some alternative that is a lesser sanction. Well, in this case, Your Honor, there's nothing that prohibited Mr. Mitchell from turning around the day after he received the dismissal order from the district court and refiling it along with the new IFP motion where he set forth all of the additional facts that were alluded to by Mr. Mitchell. Well, I mean, he did supplement his filings. That was entered after the district court's judgment. But you just said there was nothing that prevented him from coming back after the judgment was entered. Well, that's exactly what he did. I mean, he filed additional pleadings saying, I'm getting no treatment. Plaintiff receives no treatment. But those documents were in the course. I'm speaking in terms of the refiling because this court has always looked at a 1915 E dismissal without prejudice as being the inconvenience of a refiling. Well, the district court had told him when he refiles, he has to pay the $500. So, he just files these in the same. You know, the danger of dismissing this under Rule 11, which, you know, is an attorney rule, you know, saying that you have notice when Rule 11 is invoked for a case where you have a represented party is one thing, but where you have a pro se litigant who's sanctioned without being afforded or told that he could be afforded an opportunity to rebut that and told you're going to have to pay a filing fee. And he's filed away on his deathbed? That's really not a circumstance that the precedence that you're saying would apply address. Isn't that right? That is correct, Your Honor. There are some cases from the circuit that are published decisions where notice under 1915 E has been found to be sufficient when a litigant had been informed of his filing status and three striker status in prior orders issued by other courts. And I submit that that's what essentially happened here when the Southern District entered an order in the Mitchell v. Postmaster case where it set forth all of his prior strikes. And what year was that? That was 2001. Oh, okay. And in that case, it set forth these strikes and informed Mr. Mitchell of the consequences of the strikes. Fifteen years ago. And so that, in addition to the notice on the pro se complaint form itself, which implies . . . It worries me that you're . . . I mean, I understand your argument would be that what happened here is what should have happened here. And surely that's not your argument, is it? Well, I certainly don't believe that Mr. Mitchell should have been denied any medical treatment. And, again, I don't know if that is the true fact or not. What I'm saying is that the district court didn't abuse its discretion in imposing the sanction against Mr. Mitchell. But, again, and I know you said, well, he could just go back the next day, but let's talk about practicalities. Because, first, the order has to get mailed to the jail. Then he has to receive the order. Then he has to get time to write up whatever he's going to write up and get it shipped out. I mean, that in and of itself means that there's going to be the lapse of at least two weeks. At least two. And if the harm is imminent, why isn't it the case, you know,  and the death or some serious injury is going to be the result of not getting really immediate review of the situation, why isn't it the case that some lesser sanction should be imposed other than, even if it is a dismissal without prejudice, even, you know, why isn't it the case that there shouldn't be some lesser sanction imposed? I would say that if Judge Abrams had decided to impose a lesser sanction, that would have been within her discretion to do so. Here's my concern. Let's go through this Rule 11 issue, okay? Are precedents required, do they not, a show cause order? Under Rule 11, yes. I know that the questionnaire told Mr. Mitchell, in all caps, a note, failure to disclose all prior civil cases may result in the dismissal of this case. If you're unsure of any prior cases you filed, that fact must be disclosed as well. But that does not amount, it seems to me, to a show cause order that Rule 11 sanctions might be imposed. And he just wasn't given that opportunity to respond here. I would agree that that does not rise to the level of an order to show cause, but the district court did also rely on the 1915E provision. Okay. Further questions? Thank you. Thank you. Ms. Riley. Just real briefly, Your Honor, I know the court has the facts, obviously, under control. The district court, when it dismissed the complaint, it told Mr. Mitchell he had to pay a $400 filing fee to get back into the federal district court. And counsel for the state hypothesizes, well, he could have just gone back to the district court and re-completed the answers to question number eight regarding the prior filing. He should have been told, look, you need to show cause, why you shouldn't be sanctioned. Exactly. Right? There's no case. Nothing like that. No case from this court has sanctioned. The district court relied on Rule 11. There is no precedent in this context that supports the district court's ruling, and the state doesn't cite any in their brief or here today. The district court. That seemed to me to be the easier issue this morning. Exactly. That's all I have. Unless the court has any questions. No. We appreciate you, Mr. Label, accepting this appointment. It's my pleasure. And assisting the court. It's been an invaluable service. And the civil context is even more helpful. And shall we say, you know, I'm searching for the right word. I'm searching for the right word. I mean, it's not like you really paid anything to do this, and we really appreciate it. Generously. Generously. That's the word. You're doing this. We wish we had paired you with Mr. Mitchell earlier. And we have no doubt that you brought him great comfort in his final days, and we're very grateful to you for that. Thank you. It was a great honor. Thank you. We'll await that motion to substitute.